## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LORD OSUNFARIAN XODUS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  07-cv-01431 |
| | ) | |
| v. | ) | Judge Elaine Bucklo |
| | ) | |
| THE WACKENHUT CORPORATION, | ) | Magistrate Arlander Keys |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

The Wackenhut Corporation ("Wackenhut"), by its attorneys and pursuant to Rule 56 of

the Federal Rules of Civil Procedure and Local Rule 56.1(a)(3), respectfully submits the

following Response to Plaintiff's Statement of Additional Undisputed Material Facts as follows:

## PARAGRAPH NO. 1:

On November 4, 2004, Xodus went to EEOC without an attorney.  (Xodus Tr. 9.)  He
filled out an EEOC charge questionnaire "under penalty of perjury" stating that Wackenhut
"wouldn't hire for employment" because "I wouldn't cut off dreadlocks" and "I explained I had
my dreadlocks for religious purposes."  Xodus submitted this information to the EEOC.  (Xodus
Tr. 8-11, 332-335; Xodus EEOC Questionnaire, Exhibit A).

## RESPONSE:

Immaterial.  *Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir.

1999) (affirming summary judgment for employer on unplead religious accommodation claim

where EEOC charge alleged only religious discrimination and dismissing plaintiff's the "EEOC

drafted it" excuse).  Plaintiff's EEOC Charge against Wackenhut does not allege a failure to

accommodate his religion, and that document was complete and accurate at the time that he

signed it.  (Plaintiff Dep. Vol. 1:250, 252-253 (Q: So it was true and accurate at the time that you

signed that document, correct? A: Yes.); Wackenhut Appendix Exhibit 12 (Wackenhut Charge of Discrimination).)

Further answering, Plaintiff testified that he had an opportunity to review and sign the Charge of Discrimination prior to signing it; that he was represented by counsel at the time he filed his charge; that he had filed two other charges against other security companies prior to filing his charge against Wackenhut (both of which allege *both* religious discrimination *and* failure to accommodate); and that he was unaware of when, if ever, Wackenhut saw the questionnaire he completed. (Plaintiff Dep. Vol. 1: 8-11, 149, 170, 251-252. Compare Wackenhut's Appendix Exhibit 12 (Wackenhut Charge of Religious Discrimination) with Exhibit 10 (Securitas Charge of Religious Discrimination and Failure to Accommodate) and Exhibit 11 (Allied Security Charge of Religious Discrimination and Failure to Accommodate).

## PARAGRAPH NO. 2:

On November 4, 2004, the EEOC interviewed Xodus after he filled out the EEOC questionnaire. In the interview notes, the EEOC wrote down, "wouldn't cut dreadlocks b/c of relig reasons" and "R[espondent]: wouldn't be able to hire you for the same reason. CPs [charging party's] unwillingness to cut dreadlocks" and "accordg to relig beliefs can't cut hair." (EEOC Interview Notes, Exhibit B.)

## RESPONSE:

Immaterial. *Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (affirming summary judgment for employer on unplead religious accommodation claim where EEOC charge alleged only religious discrimination and dismissing plaintiff's the "EEOC drafted it" excuse). Further answering, Plaintiff admitted he did not know the EEOC's process after he filed a charge of discrimination or whether a company received a copy of the questionnaire; however the Charge was complete and accurate at the time that he signed it. (Plaintiff Dep. Vol.. 1:251-253.) Finally, Plaintiff cannot rely on unauthenticated hearsay documents on summary judgment. *Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed. Appx. 711,

2

718 (7th Cir. 2005) (hearsay is not competent evidence that may be used to oppose a motion for

summary judgment); *Overton v. City of Harvey*, 29 F. Supp. 2d 894, 902-03 (N.D. Ill. 1998)

(striking exhibit when foundation testimony was provided by the plaintiff, who was not qualified

to lay foundation, as there was no evidence that he knew about the procedures under which the

records were created).

**PARAGRAPH NO. 3:**

The EEOC drafted an EEOC charge for Xodus alleging hiring discrimination on the basis
of religion.  (Xodus EEOC Charge Against Wackenhut, Exhibit C.)  Xodus believed that the
EEOC employees whom he dealt with were experts on drafting EEOC charges.  (Xodus Tr. 332-
335.)

**RESPONSE:**

Immaterial.  Plaintiff's EEOC Charge states only that Plaintiff "believe[s] that [he] has

been discriminated against on the basis of [his] religion, Rastafarianism/Hebrew Israelite, and

retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Wackenhut

Appendix Exhibit 12 (Wackenhut Charge of Discrimination).)  This charge was true and accurate

at the time Plaintiff signed the document.  (Plaintiff Dep. Vol. 1, 252-253.)  Plaintiff cannot rely

on self-serving deposition testimony to defeat a motion for summary judgment.  *Beasley v.*

*Indiana Bell Tel. Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996).

**PARAGRAPH NO. 4:**

The EEOC researched the law of religious accommodation and placed the results of the
research into Xodus' EEOC file.  (EEOC Research On Religious Accommodation Law,
Exhibit D.)

**RESPONSE:**

Immaterial.  Paragraph No. 4 relies on Plaintiff's rank speculation, is hearsay, and cannot

be considered on summary judgment.  *Van Koten v. Family Health Mgmt.*, No. 97-1294, 1998

U.S. App. LEXIS 1837, at *12 (7th Cir. Feb. 6, 1998) (subjective beliefs and speculation of a

3

plaintiff are insufficient to create a genuine issue of material fact); *Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed. Appx. 711, 718 (7th Cir. 2005) (hearsay is not competent evidence that may be used to oppose a motion for summary judgment). Further answering, Plaintiff failed to authenticate these documents during discovery, making them inadmissible on summary judgment. *Overton v. City of Harvey*, 29 F. Supp. 2d 894, 902-03 (N.D. Ill. 1998) (striking exhibit when foundation testimony was provided by the plaintiff, who was not qualified to lay foundation, as there was no evidence that he knew about the procedures under which the records were created).

**PARAGRAPH NO. 5:**

After receiving Xodus' EEOC charge, Wackenhut conducted an investigation into Xodus' religious accommodation allegations. As part of the investigation, Clarence McCuller sent Joe Krol an email providing McCuller's version of the interview: "Mr. Xodus stated he would not cut his hair that it was against his belief." (McCuller's 12/17/04 Email To Krol, Exhibit E.)

**RESPONSE:**

Admit that Wackenhut investigated Xodus' EEOC Charge. Deny that Wackenhut "conducted an investigation in Xodus' religious accommodation allegations." Plaintiff alleged, only, a claim of religious discrimination. (*See* Wackenhut SOF ¶ 21, which Plaintiff admitted; Plaintiff Dep. Vol. 1, 252-253; Wackenhut Appendix Exhibit 12 (Wackenhut Charge of Discrimination).) Wackenhut admits that once the Charge of religious discrimination was received, that it investigated that Charge and that Clarence McCuller drafted the 12/17/04 email to Joe Krol that is contained in Plaintiff's Exhibit E.

**PARAGRAPH NO. 6:**

Wackenhut produced an investigation report stating, "At no time did Mr. Xodus inform Clarence of his religious affiliations or beliefs that prohibits Mr. Xodus from adhering to Wackenhut's standards of appearance for Security Officers." (Wackenhut's 1/12/05 Investigation Report, Exhibit F.)

**RESPONSE:**

Deny that Plaintiff's Exhibit F is an "investigation report." The document is entitled "Brief on Mr. Xodus' Application and Interview" which is an email from Joe Krol to P. Nunez and P. Marmon, and which explains Wackenhut's understanding of Plaintiff's interview. Further answering, the email also states that Mr. Xodus informed Mr. McCuller that he would not comply with Wackenhut's grooming standards because it was "against my belief," but that at no time did Mr. Xodus "state what he meant by 'belief' when he made that statement." (Plaintiff's Exhibit F.) Such a vague reference is insufficient to place Wackenhut on notice that Plaintiff was raising a claim of religious discrimination or accommodation. *See e.g.*, *Kreilkamp v. Roundy's, Inc.*, 428 F. Supp. 2d 903, 908 (W.D. Wis. 2006) (holding that employers are not charged with detailed knowledge of beliefs and observances associated with particular religious organizations). *See also Reed v. Great Lakes Cos.*, 330 F.3d 931, 935-36 (7th Cir. 2003) ("[a] person's religion is not like his sex or race-something obvious at a glance;" even the wearing of religious symbol may not pinpoint his particular beliefs and observances); *Van Koten v. Family Health Management, Inc.*, 955 F. Supp. 898, 903 (N.D. Ill. 1997) (granting summary judgment; employee's statement that Halloween was his religious holy day insufficient to establish employer's knowledge of his "Wiccian" religion).

**PARAGRAPH NO. 7:**

Wackenhut provided the EEOC with a position statement stating "at no time during his interview did Mr. Xodus claim that he had a sincerely held religious belief that required him to wear his hair in this fashion..." (Wackenhut's 1/13/05 EEOC Position Statement, Exhibit G.)

**RESPONSE:**

Admit that Plaintiff's Exhibit G so states. Further answering, Wackenhut also informed the EEOC that it "vigorously denies Mr. Xodus' allegations" and "Mr. Xodus stated he would not cut his hair, but again, *he did not claim a religious reason for this*." (Wackenhut's 1/13/05

EEOC position Statement.)  *See Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL

1574246, \*14 (N.D. Ill. July 12, 2004) (holding that even if defendant's position statement filed

with EEOC discusses in boilerplate fashion whether ADA accommodation duties exist sheds no

light on whether the EEOC actually investigated any purported failure to accommodate claim

advanced by plaintiff).

## PARAGRAPH NO. 8:

Pattie Marmon, Wackenhut's Director of EEO and Affirmative Action Programs, who investigated Xodus' EEOC charge and prepared Wackenhut's position statement to the EEOC, testified that when she submitted Wackenhut's position statement to the EEOC, she understood that Xodus was alleging that he had been denied a religious accommodation, and it was her intention to argue that Mr. Xodus had not requested a religious accommodation.  (Marmon Tr. 126-127.)

## RESPONSE:

Admit that in its position statement Wackenhut asserted that Plaintiff had not requested a

religious accommodation.  (Marmon Dep. 126-127.)

Q:      And so when you submitted your position statement to the EEOC it was your

intention to argue that Mr. Xodus *had not requested a religious accommodation*?

A:      Yes, that was my understanding of what happened.

(emphasis added).  *See also Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL 1574246,

\*14 (N.D. Ill. July 12, 2004) (holding that even if defendant's position statement filed with

EEOC discusses in boilerplate fashion whether ADA accommodation duties exist sheds no light

on whether the EEOC actually investigated any purported failure to accommodate claim

advanced by plaintiff).

## PARAGRAPH NO. 9:

After the EEOC informed Xodus about Wackenhut's position on the religious accommodation issue, Xodus provided the EEOC with a rebuttal letter stating, "Mr. Xodus explained that he wore dreadlocks for religious reasons, and asked if he could keep his

dreadlocks on the job.  The interviewer said Mr. Xodus could not be hired with dreadlocks."
(Xodus' 7/20/05 Letter To EEOC, Exhibit H.)

**RESPONSE:**

Immaterial.  Wackenhut has never addressed a "religious accommodation issue."

Plaintiff's Exhibit H is self-serving hearsay and cannot be considered on summary judgment.

*Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed. Appx. 711, 718 (7th Cir. 2005) (hearsay is not

competent evidence that may be used to oppose a motion for summary judgment).  Significantly,

Wackenhut notes for the Court's attention that Wackenhut told the EEOC that Plaintiff never

mentioned that he wore dreadlocks for religious reasons, and that Plaintiff's counsel advised the

EEOC of the following:

- That Mr. Xodus had a "previous history of attempting to get religious accommodations from other security company employers;"

- That Plaintiff's counsel did not think Wackenhut's claim was "credible;"

- That "based on [counsel's] dealing with security company's in general, that Wackenhut is hostile to dreadlocks, whether worn for religious reasons or not."

(Plaintiff's Exhibit H.)  In light of Plaintiff's pattern of bringing charges of religious

discrimination against security companies, Plaintiff's counsel's letter should be viewed

skeptically and as having no evidentiary value whatsoever.

**PARAGRAPH NO. 10:**

The EEOC attempted to conciliate Xodus' religious accommodation complaint; in
response, Wackenhut wrote to the EEOC making a counter-offer and stating, "Mr. Xodus never
communicated that he had strongly held religious beliefs that required an accommodation."
(Wackenhut's 9/22/06 Letter To EEOC, Exhibit I.)

**RESPONSE:**

Deny that Plaintiff brought a "religious accommodation complaint."  Further answering,

Plaintiff should not be revealing information that is protected subject to Fed. R. Evid. 408.  In

fact, Wackenhut's 9/22/06 letter to the EEOC confirms that Wackenhut was not on notice of

7

Plaintiff's religion or any religious accommodation request or needs at the time of his interview.

(*See* Wackenhut's Opening Summary Judgment Brief, Section II.B.; Wackenhut's Reply Brief,

Section III.A.)  *See e.g.*, *Kreilkamp v. Roundy's, Inc.*, 428 F. Supp. 2d 903, 908 (W.D. Wis.

2006); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935-36 (7th Cir. 2003); *Van Koten v. Family*

*Health Management, Inc.*, 955 F. Supp. 898, 903 (N.D. Ill. 1997).

**PARAGRAPH NO. 11:**

Xodus and Wackenhut then exchanged pre-lawsuit communications regarding Xodus' religious accommodation claims.  In its email to Xodus, Wackenhut stated, "Wackenhut's supervisor is very strong and convincing in his assertion that your client never brought up his religious beliefs as the reason for his hairstyle."  (Xodus' 3/7/07 Letter To Wackenhut, Exhibit J; Wackenhut's 3/14/07 Email To Xodus, Exhibit K.)

**RESPONSE:**

Deny that Plaintiff brought "religious accommodation claims."  Further answering,

Wackenhut's 3/14/07 email to Xodus confirms that Wackenhut was not on notice of Plaintiff's

religion or religious accommodation request or needs at the time of his interview.  (*See*

Wackenhut's Opening Summary Judgment Brief, Section II.B; Wackenhut's Reply Brief,

Section III.B.)  *See e.g.*, *Kreilkamp v. Roundy's, Inc.*, 428 F. Supp. 2d 903, 908 (W.D. Wis.

2006); *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935-36 (7th Cir. 2003); *Van Koten v. Family*

*Health Management, Inc.*, 955 F. Supp. 898, 903 (N.D. Ill. 1997).

**PARAGRAPH NO. 12:**

Xodus' lawsuit alleges, "15.  Mr. McCuller told Plaintiff that Defendant did not allow security guards to wear dreadlocks.  16.  Plaintiff explained that his religious beliefs prohibited him from cutting his hair, and required him to wear his hair in dreadlocks.  17.  Mr. McCuller terminated the interview and denied Plaintiff the job for failure to comply with Defendant's appearance standards."  (Xodus' Lawsuit Against Wackenhut, Exhibit L.)

**RESPONSE:**

Immaterial.  Plaintiff's Complaint is not "evidence" of anything.  *Nisenbaum v.*

*Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not

evidence."). Further answering, these allegations are outside the scope of Plaintiff's Charge of

Discrimination and may not be considered by the Court. *Novitsky v. American Consulting*

*Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (affirming summary judgment for employer on

unplead religious accommodation claim where EEOC charge alleged only religious

discrimination).

## PARAGRAPH NO. 13:

As a Rastafarian/Hebrew Israelite, Xodus' sincerely-held religious beliefs prohibit him from cutting his hair and require him to wear his hair in dreadlocks. (Xodus Tr. 98-100, 338; Xodus' Answer To Interrogatory 12, Exhibit N.)

## RESPONSE:

Immaterial. Such self-serving testimony cannot be considered on summary judgment.

*Beasley v. Indiana Bell Tel. Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996) ("a

litigant may not rely on self-serving depositions to survive summary judgment"); *see also*

*Ballentine v. Illinois State Police*, 126 Fed. Appx. App. 307, 308 (7th Cir. March 4, 2005); *Tyler*

*v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995).

## PARAGRAPH NO. 14:

Wackenhut's Appearance Policy required short hair for male officers; men's hair had to be neatly combed, and hair length could not extend beyond the shirt collar. (Pages 29-30 of Wackenhut's Security Officer Handbook, Exhibit M; McCuller Tr. 159-160.) Male officers were not permitted to have dreadlocks, regardless of length. (McCuller Tr. 168-169.)

## RESPONSE:

Admit that Wackenhut's Appearance Policy so states. Wackenhut denies that McCuller

testified that male officers were not permitted to have dreadlocks. Rather, McCuller testified that

in his experience he had never seen an officer with braids or any hairstyle below the collar.

(McCuller Dep. Vol. 2, 168-169.) Further answering, McCuller testified that during his tenure

with Wackenhut that no one ever requested a religious accommodation. (McCuller Dep. Vol. 2,

189.)

## PARAGRAPH NO. 15:

During the job interview, Wackenhut did not ask about Xodus' religion or religious needs. (Xodus Tr. 223.) Xodus would have provided more information if Wackenhut had requested it. (Xodus Tr. 223.) But Wackenhut simply terminated the interview when Xodus stated he could not comply with the grooming policy for religious reasons. (Xodus Tr. 219.)

## RESPONSE:

Immaterial. During Plaintiff's interview, the topic of Plaintiff's religion or religious

needs was not discussed. (*See* Wackenhut's SOF ¶¶ 32 and 33, which Plaintiff "admitted.")

Plaintiff's self-serving testimony is not properly considered on summary judgment. *Beasley v.*

*Indiana Bell Tel. Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996) ("a litigant may

not rely on self-serving depositions to survive summary judgment").

## PARAGRAPH NO. 16:

Wackenhut never asked Mr. Xodus if he was willing to cover up his dreadlocks in any way. (McCuller Tr. 264.)

## RESPONSE:

Immaterial. During Plaintiff's interview, the topic of Plaintiff's religion or religious

needs was not discussed. (*See* Wackenhut's SOF ¶¶ 32 and 33, which Plaintiff "admitted.")

Plaintiff's self-serving testimony is not properly considered on summary judgment. *Beasley v.*

*Indiana Bell Tel. Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996) ("a litigant may

not rely on self-serving depositions to survive summary judgment").

## PARAGRAPH NO. 17:

If Wackenhut had asked Mr. Xodus to cover up his dreadlocks, he would have done it, because the Bible does not require Mr. Xodus to openly display his dreadlocks. If Wackenhut had asked him to wear a cap, he would have done it. If Wackenhut had asked him to tuck his dreadlocks into his shirt collar so the dreadlocks would not be visible, he would have done it. If Wackenhut had asked him to pull his dreadlocks up above his shirt collar and put his dreadlocks

10

in a bun, he would have done it. If Wackenhut had asked him to pull his dreadlocks up above his shirt collar and cover his dreadlocks with a cloth, he would have done it. If Wackenhut had asked him to pull his dreadlocks up above his shirt collar and cover his dreadlocks with a turban, he would have done it. He would have covered his hair with any safe covering that Wackenhut might have proposed. (Xodus Tr. 339-341.)

**RESPONSE:**

Immaterial. During Plaintiff's interview the topic of Plaintiff's religion or religious needs was not discussed. (*See* Wackenhut's SOF ¶¶ 32 and 33, which Plaintiff "admitted.") Plaintiff's self-serving testimony is not properly considered on summary judgment. *Beasley v. Indiana Bell Tel. Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996) ("a litigant may not rely on self-serving depositions to survive summary judgment").

**PARAGRAPH NO. 18:**

McCuller did not offer Xodus a position at a dock. McCuller did not say that Xodus could have a position at a dock when such a position opened up. McCuller did not say he would let Xodus know when a dock position was available. McCuller said that there were no dock positions available, and that he could not offer Xodus employment. (Xodus Tr. 219.) While McCuller was Manager of Physical Security, there was a lot of turnover among the Wackenhut security officers working in loading dock positions at Wackenhut's Quaker Plaza account. (McCuller Tr. 136-139.) But, after the day of Xodus' job interview, McCuller never considered Xodus for a position when new openings came up, because Xodus had refused to cut his hair. (McCuller Tr. 264-265.)

**RESPONSE:**

According to Plaintiff's testimony, McCuller raised the possibility of a dock position with him but there were no such positions available at the time of the interview. (Plaintiff Dep. Vol. 1, 219; see also Wackenhut's SOF ¶ 31.) Wackenhut objects to the characterization of Mr. McCuller's testimony in Paragraph 18; Wackenhut has never agreed that Plaintiff's version of the interview was accurate but takes them as true for purposes of summary judgment, only. In McCuller's version of the interview, Plaintiff never mentioned his "religious reasons" for wearing his dreadlocks, but simply said that cutting his hair was against his "beliefs."

> When I first saw him, I offered him a seat. I had him sit down. I asked him, I said, "Before we get into the interview or discuss opportunities, are you willing to cut your hair?" He then said "no," and I said, "Well, we have a grooming policy. At this time I can't offer you employment." He stated that, "See, that's why I am suing Securitas." Got up and says, "Against my belief" and walked out of my office.

(McCuller Dep. Vol. 2, 204.) Thus, the question of why Mr. McCuller never considered Plaintiff for a second position was simply because Plaintiff refused to comply with the dress and grooming policy. McCuller's decision not to reconsider Plaintiff for a position had no religious motivation or connotation and Plaintiff's Paragraph 18 has taken McCuller's testimony out of context. Additionally, Paragraph 18 fails to comply with Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 19:

McCuller terminated Xodus' job interview. (Xodus Tr. 219.)

## RESPONSE:

Deny. Upon learning that there were no positions currently available, Plaintiff thanked McCuller for his time and left the interview. (Plaintiff Dep. Vo1. 219.) Further answering, Plaintiff admitted that he never identified his religion or the specifics of his religion during his interview. (*See* Wackenhut's SOF ¶¶ 31, 32, to which Plaintiff "admitted.")

## PARAGRAPH NO. 20:

Xodus has been limited in his ability to work because discrimination by Wackenhut aggravated his pre-existing depression. Xodus was stabilizing prior to 2004. (Xodus' Answer To Interrogatory 11, Exhibit N.) He was in excellent mental health in March, April, and May 2004, because he had a sense of direction, and he thought he would have a future in the security industry. (Xodus Tr. 343-344[sic]) But he deteriorated in the second half of 2004, after the discrimination by Wackenhut. (Xodus' Answer To Interrogatory 11, Exhibit N.) The discrimination by Wackenhut was shocking, mentally draining, and mentally exhausting for him. (Xodus Tr. 246.) If Wackenhut had not discriminated against Xodus, and if Wackenhut had instead given him a good job, he would not have deteriorated, and he would not have been hospitalized in 12/04, three times in 2005, and three times in 2006, so he would have been able to remain in the workforce full-time. (Xodus' Answer To Interrogatory 11, Exhibit N.)

**RESPONSE:**

Denied. Plaintiff's Paragraph 20 relies on sheer speculation, hearsay and other

inadmissible evidence. Evidence "offered in support of or opposition to summary judgment

create[s] an issue of fact only to the extent that [it] would be admissible if offered live on the

witness stand." *Watson v. Lithonia Lighting*, 304 F.3d 749, 751-52 (5th Cir. 2002). In that

regard, any rank speculation that Wackenhut was the "cause" of Plaintiff's inability to work is

not properly considered on summary judgment, because Plaintiff is not qualified to opine as to

the causation of his mental health problems; these allegations cannot be considered by the Court.

*See, e.g.*, *Kirk v. AMTRAK*, 2007 U.S. Dist. LEXIS 45699, at *4-5 (N.D. Ill. June 25, 2007)

(granting summary judgment and disregarding Plaintiff's insufficient, summary conclusions for

his medical conditions because he offers nothing more than his conclusory lay opinions); *Frazier

v. Ind. Dep't of Labor*, 2003 U.S. Dist. LEXIS 9067 (S.D. Ind. Mar. 24, 2003) ("It is not

appropriate for the non-expert witnesses to be asked questions or give answers which cause them

to attribute causation for the Plaintiff's distress or anguish to the demotion").

**PARAGRAPH NO. 21:**

Since the denial of the job by Wackenhut, Xodus has held security positions for extended
periods of time, when his health permitted. Xodus worked full-time as an unarmed tactical
officer for Jordan Security Services (and its successor company, First Security Services) from
1/05 to 4/06, except for periods of hospitalization. Xodus has worked part-time as an unarmed
security officer for the University of Chicago Police from 10/05 to the present, except for periods
of hospitalization. (Xodus' Answer To Interrogatory 7, Exhibit N.)

**RESPONSE:**

Denied. The record evidence does not support that Plaintiff worked for "extended"

periods of time. Further answering, Wackenhut states that Plaintiff resigned from or turned

down full-time positions, some of which paid more money than his current part-time position, at

13

which he works 15 hours per week.  (Wackenhut Exhibit 16, Plaintiff's Answers to Interrogatory

Number 7; *see also* Wackenhut's SOF ¶¶ 45-55 and their corresponding "replies.")

**PARAGRAPH NO. 22:**

Xodus held various jobs until the positions ended.  He left National K-9 Security when
National K-9 went into bankruptcy.  He left temporary security positions at the Gospel, Blues,
and Taste Of Chicago Festivals when those festivals were over.  He left his position as a seasonal
loss prevention employee for Sears Roebuck when his position ended after the Christmas season.
He left his position as a seasonal part-time tax preparer at PLS Tax Services when the office
closed.  (Xodus' Answer To Interrogatory 7, Exhibit N.)

**RESPONSE:**

Admit that Plaintiff has worked at various jobs only sporadically since 2004.

(Wackenhut Exhibit 16, Plaintiff's Answers to Interrogatory Number 7; *see also* Wackenhut's

SOF ¶¶ 45-55 and their corresponding "replies.")

**PARAGRAPH NO. 23:**

Xodus did turn down some positions because their schedules conflicted with his schedule
at the University Of Chicago Police.  Xodus chose the University Of Chicago Police position
over the other positions because the University Of Chicago Police position was important for his
mental health.  (Xodus' Answers To Interrogatory 7 and 9, Exhibit N.)

**RESPONSE:**

Admit that Plaintiff turned down certain position, which cut off any claim for damages

against Wackenhut.  *See Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 561 (7th Cir.

1990) (holding that plaintiff failed to mitigate damages by turning down two or three job offers).

Deny the remainder of Paragraph 23.  Plaintiff's self-serving testimony as to why he turned

down those positions cannot be considered on summary judgment.  *Van Koten v. Family Health

Mgmt.*, No. 97-1294, 1998 U.S. App. LEXIS 1837, at *12 (7th Cir. Feb. 6, 1998) (subjective

beliefs and speculation of a plaintiff are insufficient to create a genuine issue of material fact);

*Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed. Appx. 711, 718 (7th Cir. 2005) (hearsay is not

competent evidence that may be used to oppose a motion for summary judgment).

**PARAGRAPH NO. 24:**

It was important for Xodus' mental health for him to work in a professional environment with a long-term future, such as the University Of Chicago Police. (Xodus Tr. 283-284.) Xodus' therapist told him that working in the right environment was important for his mental health. (Xodus Tr. 344.) In light of his experience with Wackenhut and the resulting damage to his health, Xodus was fearful of possible discrimination by new employers, and he did not want to give up a job that was good for his mental health, in exchange for a job that might discriminate against him. (Xodus Tr. 283-284.) Because of his mental health, he was only willing to take a full-time job whose schedule didn't conflict with his University Of Chicago Police position. (Xodus Tr. 288, 292.) Xodus would leave the University Of Chicago Police if he were offered a full-time position with a security company where he felt mentally comfortable. (Xodus Tr. 345.) Alternatively, he was also looking for a second part-time job whose schedule would not conflict with his University Of Chicago Police position. (Xodus Tr. 285.) Furthermore, Xodus expects to get a full-time position with the University Of Chicago Police. (Xodus Tr. 345.)

**RESPONSE:**

Denied. Plaintiff's Paragraph 24 relies on sheer speculation, hearsay and other inadmissible evidence. Evidence "offered in support of or opposition to summary judgment create[s] an issue of fact only to the extent that [it] would be admissible if offered live on the witness stand." *Watson v. Lithonia Lighting*, 304 F.3d 749, 751-52 (5th Cir. 2002); *Tierney v. Quincy Sch. Dist. No. 172*, 125 Fed. Appx. 711, 718 (7th Cir. 2005) (hearsay is not competent evidence that may be used to oppose a motion for summary judgment).

The Court must disregard any rank speculation that Wackenhut was the "cause" of Plaintiff's inability to work is not properly considered on summary judgment, because Plaintiff is not qualified to opine as to the causation of his mental health problems; these allegations cannot be considered by the Court. *See, e.g., Kirk v. AMTRAK*, 2007 U.S. Dist. LEXIS 45699, at *4-5 (N.D. Ill. June 25, 2007) (granting summary judgment and disregarding Plaintiff's insufficient, summary conclusions for his medical conditions because he offers nothing more than his conclusory lay opinions); *Frazier v. Ind. Dep't of Labor*, 2003 U.S. Dist. LEXIS 9067 (S.D. Ind. Mar. 24, 2003) ("It is not appropriate for the non-expert witnesses to be asked questions or give

15

answers which cause them to attribute causation for the Plaintiff's distress or anguish to the demotion").

Similarly, Plaintiff has turned down full-time positions and part-time positions at which he could have made more money, thereby cutting off any obligation Wackenhut may have as to damages. *See Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 561 (7th Cir. 1990) (holding that plaintiff failed to mitigate damages by turning down two or three job offers). Finally, Paragraph 24 fails to comply with Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 25:

Xodus was unable to accept one particular security position, because he was hospitalized around the time he was supposed to begin work. (Xodus' Answer To Interrogatory 9, Exhibit N.)

## RESPONSE:

Admit. Further answering, Plaintiff's periods of hospitalization also cut off any obligation Wackenhut may have as to damages. *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. Ill. 2008) (plaintiff may not collect damages for periods of time in which he otherwise would have been unable to work for the company).

## PARAGRAPH NO. 26:

Wackenhut itself has accommodated at least one male security officer wearing dreadlocks. (Wackenhut's 1/30/09 Supplemental Responses To Xodus' Requests To Admit, Response To Request 10, Exhibit O; Rasun Heru Anpu Aton v. The Wackenhut Corporation, 2002 WL 32502095 (D. Md. 2002), *affirmed*, 61 Fed.Appx. 96 (4th Cir. 2002) (unpublished), Exhibit P.)

## RESPONSE:

Wackenhut admits that on December 3, 2008, it learned that a male security officer who worked in its mid-Atlantic region wore dreadlocks. (Wackenhut's 1/30/09 Appendix Exhibit 2 (Docket 91), Wackenhut's 1/30/09 Supplemental Responses to Plaintiff's Requests to Admit,

No. 10; Wackenhut's 1/30/09 Appendix Exhibit 1 (Docket entry 91), Declaration of Patricia

Marmon ¶¶ 13-16.)  Further answering, Wackenhut states that this employee was permitted to

wear this non-religious hairstyle until a customer called to complain about the guard's

appearance and asked that the guard be removed from the account to which he was assigned.

(Wackenhut's 1/30/09 Appendix Exhibit 1 (Docket entry 91), Marmon Dec. ¶¶ 17-19.)

Wackenhut denies that the cited reference to the *Aton* case supports Plaintiff's Paragraph 26; the

plaintiff in *Aton* did not work for Wackenhut.  (Wackenhut's 1/30/09 Appendix Exhibit 1

(Docket entry 91), Marmon Dec. ¶¶5-6.)

## PARAGRAPH NO. 27:

Xodus has worked as a security officer for several employers which had no objections to
his dreadlocks.  (Xodus Tr. 337-338.)  Of the large number of security companies where he has
interviewed, only six have told him that his dreadlocks violate their grooming policy, and only
five maintained that position after he mentioned the religious reasons for his dreadlocks.  (Xodus
Tr. 256-257, 273-274; Xodus' Answer To Interrogatory 5, 7, and 9, Exhibit N.)

## RESPONSE:

Immaterial.  Wackenhut has no knowledge of the dress and grooming policies for the

"several employers" referenced in Plaintiff's Paragraph 27.  Further answering, Plaintiff's self-

serving testimony is not properly considered on summary judgment.  *Beasley v. Indiana Bell Tel.*

*Co.*, 1996 U.S. App. LEXIS 4956 (7th Cir. Ind. Mar. 6, 1996) ("a litigant may not rely on self-

serving depositions to survive summary judgment").

## PARAGRAPH NO. 28:

Wackenhut's written EEO policy stated, "Title VII of the Civil Rights Act of 1964
Prohibits discrimination on the basis of ... religion ...  in hiring ...  Religion.  It is prohibited to
discriminate against an individual on the basis of religion.  This includes a requirement that
employers make reasonable accommodation for religious observance so long as it does not cause
an undue hardship to the employer."  (Page 5 of Wackenhut's EEO Policy, Exhibit Q.)
McCuller was familiar with Wackenhut's Equal Employment Opportunity policy.  (McCuller
Tr. 256.)  McCuller was also knowledgeable about the law of religious accommodation.
(McCuller Tr. 147.)

**RESPONSE:**

Admit.  Further answering, McCuller testified he understood that Wackenhut's policy

was not to discriminate, generally, and against religion, specifically, (McCuller Dep. Vol. 2,

188); that no one had ever requested a religious accommodation from him, (McCuller Dep. Vol.

2, 189); and that had such a request been raised, that he would have "run it through HR,"

(McCuller Dep. Vol. 2, 189).  (*See also* McCuller Dep. Vol. 3, 232.)

**PARAGRAPH NO. 29:**

As Wackenhut's Manager For Physical Security, interviewing job applicants for security
officer positions was a part of McCuller's job.  (McCuller Tr. 57-58.)  McCuller would decide
which applicants for security officer positions in the Chicago Loop would be approved for
further processing.  (McCuller Tr. 66-67.)  McCuller interviewed Xodus and denied him a
security officer position because of Xodus' dreadlocks.  (¶ 30 of Wackenhut's Statement Of
"Undisputed" Facts; McCuller Tr. 203-209.)

**RESPONSE:**

Admit that McCuller declined to offer Plaintiff employment because he failed to comply

with Wackenhut's dress and grooming policy.  (*See* Wackenhut's SOF ¶ 32, which Plaintiff

admitted.)

**PARAGRAPH NO. 30:**

Wackenhut's 30(b)(6) representative testified that there was no written procedure about
what steps to follow in Wackenhut's local Area offices if somebody requested a religious
accommodation.  She testified that Wackenhut hopes the local Area Manager would contact
Wackenhut's corporate office if the local Area office couldn't grant a religious accommodation,
or if the local Area office had concerns about a requested religious accommodation, so that the
corporate office could address the issue.  (Marmon Tr. 61-62, 74-75.)  Vice President Marmon
does not recall giving Area Managers any specifics on how to handle requests for religious
accommodation relating to appearance and grooming.  (Marmon Tr. 76-78.)

**RESPONSE:**

Admit.  Further answering, McCuller testified he understood that Wackenhut's policy

was not to discriminate, generally, and against religion, specifically, (McCuller Dep. Vol. 2,

188); that no one had ever requested a religious accommodation, (McCuller Dep. Vol. 2, 189);

18

and that had such a request been raised, that he would have "run it through HR," (McCuller Dep.

Vol. 2, 189).  (*See also* McCuller Dep. Vol. 3, 232.)  Additionally, Paragraph 30 fails to comply

with Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 31:

A religious accommodation procedure wasn't written down because religious accommodation requests don't come up frequently at Wackenhut; Wackenhut has written procedures on accommodating individuals with disabilities, because those requests come up more often.  (Marmon Tr. 65.)  Regarding disabilities, Wackenhut's EEO policy instructs managers to "Please review HR 600 for more detail regarding those with disabilities."  (Page 5 of Wackenhut's EEO Policy, Exhibit Q.)  Furthermore, the written ADA procedure specifically instructs managers to call the corporate office if there is an accommodation issue.  (Marmon Tr. 63.)

## RESPONSE:

Immaterial.  Notwithstanding the lack of materiality, McCuller testified he understood

that Wackenhut's policy was not to discriminate, generally, and against religion, specifically,

(McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation,

(McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it

through HR," (McCuller Dep. Vol. 2, 189.)  (*See also* McCuller Dep. Vol. 3, 232.)  Additionally,

Paragraph 31 fails to comply with Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 32:

No one in Wackenhut's "Chicago Area" was trained to handle religious accommodation requests.  Joe Krol, who was Chicago Area Manager (July 2002 to August 2006), doesn't know of anyone, in Wackenhut's Chicago area, that was trained in how to handle religious accommodation requests.  (Krol Tr. 17-18, 101.)  Wackenhut did not train Krol on how to handle religious accommodation requests.  Krol was not aware of Wackenhut's procedures on how to handle religious accommodation requests.  (Krol Tr. 43, 112-113.)  Wackenhut did not train McCuller on how to handle religious accommodation requests.  (McCuller Tr. 189, 191, 192.)  Wackenhut did not tell McCuller that if a religious issue came up during an interview, McCuller was supposed to take that to the "Chicago Area" Manager.  (McCuller Tr. 236.)

## RESPONSE:

Denied and also immaterial. Both McCuller and Krol testified that they understood that Wackenhut's policies prohibited discrimination. (McCuller Dep. Vol. 3, 232; Krol Dep. 117-118.) Notwithstanding the lack of materiality, McCuller testified he understood that Wackenhut's policy was not to discriminate, generally, and against religion, specifically, (McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation, (McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it through HR," (McCuller Dep. Vol. 2, 189.) Additionally, Paragraph 32 fails to comply with Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 33:

Wackenhut's 30(b)(6) representative testified that Wackenhut relies on each local Area Manager to ensure compliance with Wackenhut's EEO policies in his local area. (Marmon Tr. 58.) However, Joe Krol, who was Chicago Area Manager (July 2002 to August 2006), was not trained on Wackenhut's EEO policies. (Krol Tr. 17-18, 117.)

## RESPONSE:

Denied and also immaterial. Both McCuller and Krol testified that they understood that Wackenhut's policies prohibited discrimination. (McCuller Dep. Vol. 3, 232; Krol Dep. 117-118.) Notwithstanding the lack of materiality, McCuller testified he understood that Wackenhut's policy was not to discriminate, generally, and against religion, specifically, (McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation, (McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it through HR," (McCuller Dep. Vol. 2, 189.)

## PARAGRAPH NO. 34:

Wackenhut's EEO Policy required that, "Each Field Manager will ... Appoint an Area Office or Project Equal Opportunity Officer to coordinate dissemination of the Equal Opportunity Policy to all employees, monitor adherence to the Equal Opportunity Policy..." (Page 7 of Wackenhut's EEO Policy, Exhibit Q.) This policy was not followed in Wackenhut's "Chicago Area." When Krol was Chicago Area Manager (July 2002 to August 2006), there was no EEO Officer in the "Chicago Area," no one was assigned to disseminate Wackenhut's Equal

Employment Opportunity Policy in the "Chicago Area" office, no one was assigned to monitor adherence to the Equal Employment Opportunity policy in the "Chicago Area" office, and no one was assigned to make sure that there was no discrimination in the "Chicago Area" office. (Krol 17-18, 39-40.) When McCuller was Manager of Physical Security (August 2003 to March of 2005), there was no EEO Officer in the "Chicago Area," and there was no one in the "Chicago Area" who was responsible for equal employment opportunity issues. (McCuller Tr. 54, 58, 120-121.)

**RESPONSE:**

Denied and also immaterial. Both McCuller and Krol testified that they understood that

Wackenhut's policies prohibited discrimination. (McCuller Dep. Vol. 3, 232; Krol Dep. 117-

118.) Notwithstanding the lack of materiality, McCuller testified he understood that

Wackenhut's policy was not to discriminate, generally, and against religion, specifically,

(McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation,

(McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it

through HR," (McCuller Dep. Vol. 2, 189.) Additionally, Paragraph 34 fails to comply with

Local Rule 56.1 regarding a "concise" statement of fact.

**PARAGRAPH NO. 35:**

Wackenhut's EEO Policy required that, "Each Manager will ... Ensure that all management/supervisory employees are advised that: (1) Equal Employment Opportunity is an integral part of their job responsibilities and part of their performance evaluation." (Page 6 of Wackenhut's EEO Policy, Exhibit Q.) This policy was not followed in Wackenhut's "Chicago Area." Wackenhut never told McCuller that Equal Employment Opportunity was an integral part of his job responsibilities. (McCuller Tr. 255.) McCuller doesn't recall if he was ever evaluated by Wackenhut regarding his compliance with Wackenhut's Equal Employment Opportunity policy when his performance was evaluated, or if a discussion about Wackenhut's Equal Employment Opportunity policy ever came up during any of his evaluations. (McCuller Tr. 259.)

**RESPONSE:**

Denied and also immaterial. Both McCuller and Krol testified that they understood that

Wackenhut's policies prohibited discrimination. (McCuller Dep. Vol. 3, 232; Krol Dep. 117-

118.) Notwithstanding the lack of materiality, McCuller testified he understood that

21

Wackenhut's policy was not to discriminate, generally, and against religion, specifically,

(McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation,

(McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it

through HR," (McCuller Dep. Vol. 2, 189.)  Additionally, Paragraph 35 fails to comply with

Local Rule 56.1 regarding a "concise" statement of fact.

## PARAGRAPH NO. 36:

Wackenhut did not know if its managers were reading the EEO policy.  Wackenhut's
EEO Policy required that each manger read the EEO policy and then sign a receipt (Form
W-206) acknowledging that they had read and understood the EEO policy; the signed receipt is
supposed to go in each manager's personnel file.  (Page 6 of Wackenhut's EEO Policy, and
Form W-206 attached to EEO Policy, Exhibit Q; Marmon Tr. 57.)  It was the Area Managers'
responsibility to make sure that signed Form W-206s were being placed into personnel files.
(Marmon Tr. 58.)  No one in the Chicago Area office was assigned to make sure that employees
signed a form, indicating that they had read the anti-discrimination policy; the Chicago Area
Manager believed that the signing and placement of these forms in personnel files was supposed
to be monitored by the corporate office through audits of personnel files.  (Krol Tr. 40-41.)
Wackenhut's 30(b)(6) representative testified that Wackenhut is not aware of Wackenhut ever
auditing personnel files to see which managers have filled out Form W-206, and Wackenhut
doesn't know how many managers have actually signed Form W-206.  (Marmon Tr. 58-60.)
McCuller doesn't recall signing Form W-206 indicating that he had read and understood
Wackenhut's EEO policy, and he has no idea why a signed copy is not in his personnel file.
(McCuller Tr. 256-257.)

## RESPONSE:

Denied and also immaterial.  Both McCuller and Krol testified that they understood that

Wackenhut's policies prohibited discrimination.  (McCuller Dep. Vol. 3, 232; Krol Dep. 117-

118.)  Notwithstanding the lack of materiality, McCuller testified he understood that

Wackenhut's policy was not to discriminate, generally, and against religion, specifically,

(McCuller Dep. Vol. 2, 188); that no one had ever requested a religious accommodation,

(McCuller Dep. Vol. 2, 189); but that had such a request been raised, that he would have "run it

through HR," (McCuller Dep. Vol. 2, 189.)  Additionally, Paragraph 36 fails to comply with

Local Rule 56.1 regarding a "concise" statement of fact.

22

**PARAGRAPH NO. 37:**

      McCuller did not tell Xodus how to complain about harassment or discrimination. (McCuller Tr. 203-209.)  The Wackenhut job application form filled out by Xodus did not tell Xodus how to complain about harassment or discrimination.  (Xodus' Wackenhut Application Form, Exhibit R.)

**RESPONSE:**

      Immaterial.  Plaintiff filed a charge of religious discrimination with Wackenhut.

(Wackenhut's Exhibit 12 (Wackenhut EEOC Charge of Discrimination).)


**DATED:  February 20, 2009**           Respectfully submitted,

                                   THE WACKENHUT CORPORATION



                              By    /s/ Erin Dougherty Foley
                                     One of Its Attorneys

Richard B. Lapp
Erin Dougherty Foley
Meagan C. LeGear
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
(312) 460-5000

CH1 11659023.1

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2009, a copy of the foregoing **Defendant's**

**Response to Plaintiff's Statement of Additional Undisputed Material Facts** was filed with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following:

> Kamran Memon
> Law Office of Kamran Memon
> 200 S. Michigan Ave., Suite 1240
> Chicago, Illinois 60604

and via hand delivery on February 23, 2009 to the following:

> Judge Elaine E. Bucklo
> United States District Court Northern District Eastern Division
> **Courtroom Deputy, Room 1438**
> Chicago, Illinois 60603

_____/s/ Erin Dougherty Foley_____